UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LARON LOVING,

        Plaintiff,                     Case No. 2:22-cv-209

v.                                             Honorable Paul L. Maloney

TINA CUMMINGS,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claim. Plaintiff's First Amendment retaliation claim against Defendant Cummings remains in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues AMF Violence Prevention Program (VPP) Director Tina Cummings. (Compl., ECF No. 1, PageID.1.)

In Plaintiff's complaint, he alleges that in May of 2022, he "was reinstated into [VPP]" after he was previously "kicked out of the class back in December 2021 by Ms. Horrocks (not a party)" for a false threatening behavior misconduct. (*Id.*, PageID.2.)[1] Plaintiff contends that in May and June of 2022, Defendant Cummings "would make irate statements or gestures towards the [VPP] participants, including the Plaintiff, whenever one of them expressed the intentions or motives behind their criminal activity which led them to prison." (*Id.*) "As an example, at some of the group sessions while a prisoner would explain his armed robbery case, the Defendant would burst out with such comments as 'I wish one of ya'll muthafuckers would've tried to rob me; I would've killed you on the spot if it was me,' or 'I would've been disgusted of some of you if you were my child.'" (*Id.*) Plaintiff also claims that Defendant Cummings boasted and bragged "about her husband being the inspector here at [AMF] and how she has kicked others out of the group at will." (*Id.*)

In early June of 2022, "Plaintiff grew extremely concerned of [Defendant] Cummings's outrageous behavior during group sessions," and he "filed a grievance concerning the employee misconduct she exhibited in the class." (*Id.*) After filing this grievance, Plaintiff "began to receive the backlash of it from the ridicule and threats of termination made by the Defendant." (*Id.*) For example, at one VPP session, Defendant Cummings stated, "[Plaintiff], you must be something special if you thought it was smart to file a grievance on the person who has control over your freedom; I guarantee you, you'll be out of here soon." (*Id.*, PageID.3.)

---

[1] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's filings.

2

On June 14, 2022, during a VPP session, Defendant Cummings "began acting very belligerent and petty towards the Plaintiff and started nagging at him over minute things such as where he sat in the class, having his shirt tucked in, and other small nuisances that had never been an issue before." (*Id.*) At some point during the session, Plaintiff asked "politely if he [could] step out and go to the bathroom." (*Id.*) Defendant Cummings denied Plaintiff's request, and Plaintiff then explained that "he had some sort of sticky substance on his hands and desperately needed to wash [it] off." (*Id.*) Defendant Cummings instructed Plaintiff "to use the spray bottle of disinfectant that was already made available in the classroom." (*Id.*) "[O]ut of respect for the classroom," Plaintiff stepped into the hallway "to spray his hands so that the chemical fluid did not permeate throughout the classroom." (*Id.*) While Plaintiff was in the hallway, another inmate walked by, and the inmate "briefly greeted the Plaintiff with a general 'hi and bye' conversation." (*Id.*)

Upon Plaintiff's return to the classroom, Defendant Cummings "became belligerent towards the Plaintiff and went on a petty rant about [Plaintiff] speaking to another inmate outside the classroom." (*Id.*) Defendant Cummings also asked Plaintiff to move to the back of the classroom "because she did not want to be near him." (*Id.*) "After calmly being receptive of the Defendant's obnoxious rant, the Plaintiff, in a calm and humble tone of voice, stated to [Defendant] Cummings that he [would] respect her wishes for him to move further away but that her attitude and conduct was very offensive and unprofessional." (*Id.*) While Plaintiff was moving to the back of the classroom, Defendant Cummings "began making sly remarks towards the Plaintiff about the prior grievance that he wrote," stating: "You got the nerve to file a complaint against me while you're in here creating a disturbance in my classroom; we'll see how long you stay in here, and good luck with getting your parole afterwards." (*Id.*)

Plaintiff states that "unbeknownst to [him,] . . . Defendant Cummings "had quietly pressed the emergency button" at some point because approximately five minutes after their conversation, several officers "storm[ed] the building and enter[ed] into the classroom where everyone, including the Plaintiff, was sitting in a peaceful and attentive manner." (*Id.*) Defendant Cummings then pointed to Plaintiff, stating "[t]here he is, there he is, right over there; I want him out of here; he's causing a disturbance and threatened me." (*Id.*) The officers escorted Plaintiff out of the classroom, and as Plaintiff was leaving, Defendant Cummings stated: "so much for your parole, smart ass." (*Id.*) Plaintiff was then placed in segregation, and he received "fallacious misconduct [charges]" for disobeying a direct order, creating a disturbance, and insolence. (*Id.*) Subsequently, at Plaintiff's "class I misconduct" hearing, Plaintiff was found guilty of the disobeying a direct order and creating a disturbance charges, and was found not guilty of the insolence charge.[2] (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant Cummings violated his First Amendment right to be free from retaliation and "his Fourteenth Amendment right to his liberty interest where he will not be able to obtain a parole due to being unjustly terminated from the VPP class, which is mandatory for him to complete." (*Id.*, PageID.5 (emphasis omitted).) As relief, Plaintiff seeks a declaratory judgment, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.5–6.)

---

[2] Plaintiff describes his misconduct hearing as a class I misconduct hearing. The Court notes that Plaintiff's specific misconduct charges are typically class II misconduct charges; however, a class II misconduct report "may be elevated to a [c]lass I misconduct by the reviewing officer based on the seriousness of the specific facts as stated in the misconduct or the circumstances of the misconduct." MDOC Policy Directive 03.03.105, attachs. A, B (eff. Apr. 18, 2022). At this stage, it is unclear whether Plaintiff mistakenly described the hearing as a class I misconduct hearing or whether some, or all, of his original class II misconduct charges were elevated to class I misconducts.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claim

Plaintiff contends that Defendant Cummings retaliated against him in violation of his First Amendment rights. (Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's First Amendment retaliation claim against Defendant Cummings may not be dismissed on initial review.[3]

---

[3] Under certain circumstances, the factual findings at class I misconduct hearings have preclusive effect in this Court. *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013); *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014); *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). The Court's determination that Plaintiff's retaliation claim may not be dismissed at this early stage of the proceedings does not foreclose a subsequent finding that Plaintiff's retaliation claim is in fact precluded as a result of the factual findings at the misconduct hearing.

### B. Fourteenth Amendment Due Process Claim

Plaintiff also alleges that Defendant Cummings violated "his Fourteenth Amendment right to his liberty interest where he will not be able to obtain a parole due to being unjustly terminated from the VPP class, which is mandatory for him to complete." (Compl., ECF No. 1, PageID.5 (emphasis omitted).)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (concluding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (finding no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (concluding that there is no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (discussing that participation in a rehabilitative program is a

privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (finding no constitutional right to rehabilitative services). Plaintiff therefore does not have a constitutionally protected liberty interest in participating in VPP.

Furthermore, with respect to Plaintiff's claim regarding his inability to obtain parole due to his termination from VPP, there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the United States Court of Appeals for the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in

8

parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Thus, Defendant Cummings's alleged interference with Plaintiff's future parole prospects does not implicate a federal right.

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment due process claim will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourteenth Amendment due process claim will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claim against Defendant Cummings remains in the case.

An order consistent with this opinion will be entered.


Dated:   March 17, 2023                           /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge