UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARON LOVING #971900,                            Case No. 2:22-cv-00209

                 Plaintiff,              Hon.  Paul L. Maloney
                                                 U.S. District Judge

    v.

TINA CUMMINGS,

                 Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 23.)  Plaintiff has not filed a response.

State prisoner  Laron Loving filed a complaint under 42 U.S.C. § 1983 alleging that Defendant Baraga Correctional Facility (AMF) Violence Prevention Program (VPP) Director Tina Cummings retaliated against him, in violation of the First Amendment.  (ECF No. 1.)   On March 17, 2023, the Court issued an Opinion and Order dismissing Loving's Fourteenth Amendment due process claim.  (ECF Nos. 42 and 43.)  Loving asserts in his remaining claim that Cummings issued him a false misconduct ticket in retaliation for a grievance that he says he filed against her.  The Court summarized Loving's factual allegations in the opinion:

> In Plaintiff's complaint, he alleges that in May of 2022, he "was reinstated into [VPP]" after he was previously "kicked out of the class back in December 2021 by Ms. Horrocks (not a party)" for a false

threatening behavior misconduct. (*Id.*, PageID.2.)  Plaintiff contends that in May and June of 2022, Defendant Cummings "would make irate statements or gestures towards the [VPP] participants, including the Plaintiff, whenever one of them expressed the intentions or motives behind their criminal activity which led them to prison." (*Id.*) "As an example, at some of the group sessions while a prisoner would explain his armed robbery case, the Defendant would burst out with such comments as 'I wish one of ya'll muthafuckers would've tried to rob me; I would've killed you on the spot if it was me,' or 'I would've been disgusted of some of you if you were my child.'" (*Id.*) Plaintiff also claims that Defendant Cummings boasted and bragged "about her husband being the inspector here at [AMF] and how she has kicked others out of the group at will." (*Id.*)

In early June of 2022, "Plaintiff grew extremely concerned of [Defendant] Cummings's outrageous behavior during group sessions," and he "filed a grievance concerning the employee misconduct she exhibited in the class." (*Id.*) After filing this grievance, Plaintiff "began to receive the backlash of it from the ridicule and threats of termination made by the Defendant." (*Id.*) For example, at one VPP session, Defendant Cummings stated, "[Plaintiff], you must be something special if you thought it was smart to file a grievance on the person who has control over your freedom; I guarantee you, you'll be out of here soon." (*Id.*, PageID.3.)

On June 14, 2022, during a VPP session, Defendant Cummings "began acting very belligerent and petty towards the Plaintiff and started nagging at him over minute things such as where he sat in the class, having his shirt tucked in, and other small nuisances that had never been an issue before." (*Id.*) At some point during the session, Plaintiff asked "politely if he [could] step out and go to the bathroom." (*Id.*) Defendant Cummings denied Plaintiff's request, and Plaintiff then explained that "he had some sort of sticky substance on his hands and desperately needed to wash [it] off." (*Id.*) Defendant Cummings instructed Plaintiff "to use the spray bottle of disinfectant that was already made available in the classroom." (*Id.*) "[O]ut of respect for the classroom," Plaintiff stepped into the hallway "to spray his hands so that the chemical fluid did not permeate throughout the classroom." (*Id.*) While Plaintiff was in the hallway, another inmate walked by, and the inmate "briefly greeted the Plaintiff with a general 'hi and bye' conversation." (*Id.*)

Upon Plaintiff's return to the classroom, Defendant Cummings "became belligerent towards the Plaintiff and went on a petty rant about

[Plaintiff] speaking to another inmate outside the classroom." (*Id.*) Defendant Cummings also asked Plaintiff to move to the back of the classroom "because she did not want to be near him." (*Id.*) "After calmly being receptive of the Defendant's obnoxious rant, the Plaintiff, in a calm and humble tone of voice, stated to [Defendant] Cummings that he [would] respect her wishes for him to move further away but that her attitude and conduct was very offensive and unprofessional." (*Id.*) While Plaintiff was moving to the back of the classroom, Defendant Cummings "began making sly remarks towards the Plaintiff about the prior grievance that he wrote," stating: "You got the nerve to file a complaint against me while you're in here creating a disturbance in my classroom; we'll see how long you stay in here, and good luck with getting your parole afterwards." (*Id.*)

Plaintiff states that "unbeknownst to [him,] . . . Defendant Cummings "had quietly pressed the emergency button" at some point because approximately five minutes after their conversation, several officers "storm[ed] the building and enter[ed] into the classroom where everyone, including the Plaintiff, was sitting in a peaceful and attentive manner." (*Id.*) Defendant Cummings then pointed to Plaintiff, stating "[t]here he is, there he is, right over there; I want him out of here; he's causing a disturbance and threatened me." (*Id.*) The officers escorted Plaintiff out of the classroom, and as Plaintiff was leaving, Defendant Cummings stated: "so much for your parole, smart ass." (*Id.*) Plaintiff was then placed in segregation, and he received "fallacious misconduct [charges]" for disobeying a direct order, creating a disturbance, and insolence. (*Id.*) Subsequently, at Plaintiff's "class I misconduct" hearing, Plaintiff was found guilty of the disobeying a direct order and creating a disturbance charges, and was found not guilty of the insolence charge. (*Id.*)

(ECF No. 8, PageID.35-37) (footnotes omitted).

Defendant Cummings argues that Loving failed to exhaust his administrative remedies on his alleged false misconduct retaliation claim. Here, Loving was found guilty of two misconduct violations for disobeying a direct order and creating a disturbance. The record shows that Loving never raised retaliation as a defense for his misconduct ticket during his misconduct hearing, and he never properly filed an appeal of the Misconduct Hearing Officer's guilty findings. It is respectfully

3

recommended that the Court grant Defendant Cummings's motion for summary judgment and dismiss this case due to Loving's failure to properly exhaust his administrative remedies.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1]     The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).

Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around

and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Analysis

The proper way to exhaust administrative grievances when a prisoner claims that he received a false retaliatory Class I misconduct ticket is to raise retaliation during the misconduct hearing and to raise retaliation in an application for rehearing of the misconduct guilty finding. *Siggers*, 652 F.3d at 693-94. However, if a prisoner

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

improperly attempts to exhaust false retaliatory misconduct ticket claims through the grievance process and the MDOC waives this procedural deficiency by deciding the issue on the merits at each step of the grievance process, the issue will be considered exhausted.  *Mattox*, 851 F.3d at 590-91.  Loving alleged in his complaint that he filed a Step I grievance naming Defendant and raising his retaliatory misconduct claim.  (ECF No. 1, PageID.4.)  Loving says that his Step I grievance was never processed and that he never received a Step II appeal form despite making a request for one.  (*Id*.)  Loving says that he submitted handwritten Step II and Step III appeals but never received a response.  (*Id*., PageID.5.)  Loving says that his administrative remedies were unavailable.  (*Id*.)

The undersigned concludes that Loving did not exhaust his false retaliatory misconduct claim by attempting to file a grievance on this issue.   The filing of a grievance is not the proper way to administratively exhaust a false retaliatory misconduct ticket.  Here, the MDOC did not waive the requirement that Loving must address his issues through the misconduct hearing and appeal process.  In the opinion of the undersigned, Loving's attempt to file a grievance was insufficient to exhaust his administrative remedies on his retaliation claim.

Loving was charged with creating a disturbance, disobeying a direct order, and insolence.  Loving received a hearing on those charges.  Loving was found guilty of creating a disturbance and disobeying a direct order.  The insolence charge was dismissed.  The Class I Misconduct Hearing Report stated:

| CLASS I MISCONDUCT HEARING REPORT | | | | | Rev. 10/10 |
|---|---|---|---|---|---|

| Prisoner | Prisoner Name | | Facility Code | Lock | Violation Date |
|---|---|---|---|---|---|
| 971900 | Loving | | AMF | 1 208 | 06/14/2022 |

**Charge(s)**
Creating a Disturbance; Disobeying a Direct Order; Insolence

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty     ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

This misconduct held via Tele-video conferencing within the time limits set by MDOC PD 03.03.105(BB).

Prisoner's oral statement at hearing: Not guilty for two. I never disrespected her and when she said sit down I did.  She was jumping out of her seat. I closed my folder. I did not slam it. The class was over. There was a little disturbance. Another guy said to calm down. The guy said my same while I was wiping hands. I was not getting out of my seat.

The 7 page record was read and reviewed with prisoner which included: Each document is one page unless noted. The misconduct sanction screening and assessment forms (2 pages). The prisoner and H.I. statements.

Video seen outside the prisoner's presence and held confidential as to show prisoner would allow him to know monitoring ability of fixed mounted cameras and compromise security. This included video summaries provided by facility.

The prisoner was told findings and issued a sanction. The report was then typed outside the prisoner's presence.

**FINDINGS:**

Creating a Disturbance (432) MDOC PD 03.03.105A  Actions or words of a prisoner which result in disruption or disturbance among others. See MDOC PD 03.03.105 (NN) for the process of elevating class 2 to class 1 misconduct. The

**REASONS FOR FINDINGS**

prisoner admitted he disrupted or disturbed others.  The video showed this and in fact at least one other prisoner had inter-vened to calm him down.  While the class was about over this was a disruption to the class and focused attention on him.

Disobeying a Direct Order (420) MDOC PD 03.03.105.  Refusal or failure to follow a valid and reasonable order of an employee.  The prisoner was told to wipe his hands on the paper towels by the door.  That was the authorization he had received.  He was not authorized to step out of the classroom to talk to someone in the hall.  The prisoner disobeyed the order at that point.  He was then told at least four times to get back in the class room.  He looked at the reporter at one time telling me he heard and understood what he was told and then turned back to the hall before finally returning to the room. He disobeyed the order which likewise had been elevated to a class one at review.  See above for the process.

Insolence (426) MDOC PD 03.03.105 Words, actions or other behavior which is intended to harass, degrade, or cause alarm in an employee. I dismiss this charge as the prisoner used no specific insulting or abusive language towards the reporter. While he did not readily follow instructions and then accused the reporter of disrespecting him, his behavior supported the other two charges and not a separate insolence charge.

**PROPERTY DISPOSITION (for contraband see PD 04.07.112)**

N/A

**FINDINGS**

| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 032 |
|---|---|---|---|---|---|
| Charge No. 2 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 020 |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☒ Dismissed | Reporting Code | 426 |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | ___ |

(ECF No. 24-4, PageID.104.)

The hearing report does not indicate that Loving raised his retaliation claim during the hearing.    In addition, although Loving provided a statement to the Hearing Investigator, he did not raise his retaliation claim:

DATE:        6/17/2022

TO:          Hearing    Officer

FROM:        Hearings Investigator   (M.R.)

SUBJECT:    Class I Misconduct   971900 Loving 1-208

The above prisoner was seen on 6/16/22, assessed, and asked if he wished to make a statement or make any requests of this Hearings Investigator.  Prisoner stated, "Do I think I created a disturbance, yes.  I didn't disobey the order.  I initially did not hear it; I guess she said it a second time, didn't hear it.  But another inmate in the class room said , "Hey bro" , which made me turn around, and when she told me to sit down I heard that and sat down.  She was yelling at me, that's when I sat down.  I waited for her to allow me to speak.  Then I said, I don't talk to you that way, and ask that she speaks to me like I would speak to her.  I never disrespected her or was insolence in anyway.  I would like to say again I never disobeyed her order once I realized she was speaking to me.  I immediately sat down.  Once I heard her , I complied and sat down.  Then I didn't argue with her about the order, I sat down.  I shut my folder and pointed to the clock as it was the end of class.  I never slammed my folder at all.".  Prisoner requested video of the alleged incident to "show his actions as stated.".
The prisoner made no further statements or requests.

The video was obtained and is included with this packet.

(*Id*., PageID.111.)  Finally, Loving never properly raised his retaliation claim in a request for a rehearing of his misconduct conviction.  (ECF No. 24-5, PageID.113-114 (Affidavit of Carolyn Nelson).)   Nelson attests:

> 3.     In preparation for this affidavit, I searched this database to see whether Laron Loving #971900 requested a rehearing of the June 14, 2022, class I misconduct report (ticket) for creating a disturbance, disobeying a direct order, and insolence (Ex. 3).  The database shows that Loving initially submitted an RFR for the June 14, 2022 ticket, but Loving's submission was incomplete because it did not include the ticket itself.  As Loving's submission was incomplete, per policy it was returned to him on October 5, 2022, without processing and a copy of the

> submission was not retained.  Loving needed to resubmit the RFR with the
> misconduct ticket in order for his request to be processed.  Loving did not resubmit
> a complete RFR.  Thus, a decision was not made regarding the merits of Loving's
> RFR on his June 14, 2022, ticket.

(*Id.*)

In the opinion of the undersigned, Defendant has established her burden of showing that Loving never properly exhausted his administrative remedies prior to filing this action.  It is the undersigned's opinion that no genuine issue of material fact exists on this issue.

## V.  Recommendation

Accordingly, the undersigned respectfully recommends that this Court grant Defendant's motion for summary judgment and dismiss Plaintiff Loving's retaliation claim without prejudice due to his failure to properly exhaust his administrative remedies.

If the Court accepts this recommendation, this case will be dismissed.


Dated:  August 28, 2024             /s/ *Maarten Vermaat*
                                    MAARTEN VERMAAT
                                    U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).